569 P.2d 358
Homer F. RAMSEYER, Plaintiff
and Appellant,

v.

H. Duane RAMSEYER and Mary Etta
Ramseyer, husband and wife, Donald D.
Ramseyer and Katherine Daly Ramseyer,
husband and wife, Antelope Springs
Land and Cattle Company, an Idaho cor-
poration, the Equitable Life Assurance
Society of the United States, a New York
Corporation, and John Doe I through
John Doe V, and all persons unknown
claiming any right, title, estate, lien or
interest in the real property described in
the complaint adverse to plaintiff's title,
Defendants and Respondents.

No. 12122.

Supreme Court of Idaho.

Sept. 21, 1977.

Lloyd J. Walker, Walker & Kennedy,
Twin Falls, for plaintiff and appellant.

Paul M. Beeks, Smith & Beeks, Twin
Falls, for defendants and respondents H.
Duane Ramseyer and Mary Etta Ramseyer.

Frederick F. Plankey, Plankey, Johnson,
Kvanvig & Stoker, Twin Falls, for defend-
ants and respondents Donald D. Ramseyer,
Katherine Daly Ramseyer and Antelope
Springs Land and Cattle Co.

William J. Langley, Twin Falls, for de-
fendant and respondent the Equitable Life
Assurance Society of the United States.

BISTLINE, Justice.

Plaintiff-appellant Homer F. Ramseyer
(hereinafter "Homer") appeals from an or-
der granting defendants-respondents' mo-
tions for summary judgment. Homer
brought this action to quiet title to, parti-
tion and recover mesne profits from certain
real property in the possession of his sons,
defendants-respondents H. Duane Ramsey-
er and Donald D. Ramseyer (defendant-re-
spondent Antelope Springs Land and Cattle
Company is a corporation owning Donald's
interest in the real property), and their
wives. The land in question was conveyed
by Homer to respondents by warranty deed
in 1969. We affirm, though not for the
reasons announced by the district court.

The same parties were recently before us
in the case of Ramseyer v. Ramseyer, 98
Idaho 47, 558 P.2d 76 (1976) ("Ramseyer
I"). The facts common to both cases are as
follows: Homer's first wife died sometime
in 1957. He married his second wife, Ebo-
ny, in December of 1958. Prior to this
second marriage, Homer and the sons began
their partnership known as Ramseyer Cat-
tle Company. In May of 1969, Ebony filed

for a divorce. At Homer's instigation, the partnership was dissolved and the partnership assets divided shortly thereafter on June 12, 1969. At the time of the dissolution, the partnership had three major assets: several hundred head of cattle and two ranches, Antelope Springs Ranch and Grassy Hills Ranch. By the terms of the dissolution, Homer received Grassy Hills Ranch; the sons received the cattle and Antelope Springs Ranch. In March of 1970, Ebony was granted a divorce decree and in November, 1972, a final amended judgment on the property division was entered. Ebony received a cash award representing her half of the community interest in the partnership; Homer received whatever community interests there were in the real property in his control or possession.

In *Ramseyer I*, Homer brought an action for a judicial dissolution and accounting of the partnership which had existed between him and his two sons. The sons contended that the partnership had been dissolved by mutual agreement of the parties, that all accounts between the partners had been settled in 1969 and that Homer's cause of action was barred by the statute of limitations. This Court agreed with the trial court's evaluation of the evidence:

> "The evidence is clear appellant and respondents understood that the exchange of property was final. The details of the exchange and the documentation were arrived at by appellant [Homer] and an attorney of his choosing. Respondents [the sons] testified the exchange was not their idea and they just went along with their father and his attorney." 98 Idaho at 51, 558 P.2d at 80.

We thus affirmed the conclusion of the trial court that "the transactions of June 12, 1969, constituted both a dissolution of the partnership and a winding-up of partnership affairs", and that the relevant statutes of limitations provided "an adequate period of time for an aggrieved partner, acting as a reasonably prudent business person, to discover any cause of action he may have against his partners or the partnership". 98 Idaho at 52–3, 558 P.2d at 81–2. It followed that Homer was barred from bringing his action for judicial dissolution and for an accounting by reason of the applicable statute of limitations.

The dispute in the present case centers around the following language from the warranty deed by which Homer conveyed Antelope Springs Ranch to his sons on June 12, 1969:

> "For Good and Valuable Consideration, and in an Exchange of Lands Among Tenants in Common HOMER F. RAMSEYER, also known as H. F. RAMSEYER, *a married man dealing with his sole and separate property*, Grantor, does hereby grant, bargain, sell and convey.

> .    .    .

> "TO HAVE AND TO HOLD the said premises, with their appurtenances unto the said GRANTEES and to their heirs and assigns forever." (Emphasis added.)

Homer relies upon this language in claiming an interest in Antelope Springs Ranch. The warranty deed explicitly noted that he was a married man and that he was conveying his *separate* property. He argues, therefore, that whatever *community* interest he and Ebony had in Antelope Springs Ranch was excluded from the 1969 conveyance to his sons and that this interest became his separate property by the terms of the property settlement entered in the divorce action. Homer dates the accrual of his cause of action not from the date of the conveyance in 1969 but from February, 1971, when the sons allegedly clouded his interest in Antelope Springs Ranch by mortgaging the property to secure a loan from Equitable Life.

The sons and their wives moved for summary judgment of dismissal on the grounds that Homer's causes of action were barred by the applicable statutes of limitation and by the *res judicata* effect of the partnership action. Equitable Life moved for summary judgment on the grounds that it relied on record title in the sons in loaning the money secured by the mortgage, contending that Homer was estopped from claiming any interest in the mortgaged property.

In a memorandum decision favorable to the sons and to Equitable, the district court ruled that even if Homer's 1969 deed had not conveyed whatever *community* property interest he and Ebony had in the real property, said interest became his separate property by virtue of the final divorce decree and passed to the sons at that time because of the doctrine of after-acquired title.

We affirm the result reached by the district court. We do so, however, on the grounds that the present cause of action is barred by the *res judicata* effect of our decision in *Ramseyer I.*

In the course of our discussion of the law of voluntary partnership dissolution in *Ramseyer I,* we stated that a dissolution agreement of this nature "is presumed to include *all* disputed matters among the partners, and will be final and conclusive upon them in the absence of fraud, mistake or duress." (Emphasis added.) 98 Idaho at 52, 558 P.2d at 81. In short, by demanding a judicial dissolution, an accounting and a division of partnership assets, Homer put in issue *all* his interests in the former partnership property during the course of the *Ramseyer I* litigation. He lost. This Court affirmed the trial court's determination that no *judicial* dissolution was in order because a full dissolution and winding up of the partnership had been reached by mutual agreement of the partners on June 12, 1969. The finality and completeness of the resulting decree in tying up all loose ends, is emphasized by the fact that the trial court in *Ramseyer I* granted the sons' cross-claim for reformation of the 1969 settlement to include water rights and AUM's (rights to animal unit months on federal grazing land) inadvertently omitted from the settlement agreement.

The final judgment in *Ramseyer I* quieted title to Antelope Springs Ranch in the sons. Homer now attempts to avoid that judgment by a cause of action to quiet title to Antelope Springs Ranch in him to the

extent of his alleged *community* interest in that property—an interest which, for reasons of their own, he and his attorney preferred not to make explicit in the 1969 dissolution agreement or in the partnership action.[1] The attempt so to avoid the *res judicata* effect of the earlier judgment is without merit.

The drafters of the Restatement (Second) of Judgments summed up the law on this matter in their Comment *a* to section 61:

"The law of *res judicata* now reflects the expectation that parties who are given the capacity to present their 'entire controversies' shall in fact do so."

This expectation that entire controversies will be presented and that all relevant material will be produced has long been the rule in Idaho:

"We think the correct rule to be that in an action between the same parties upon the same claim or demand, the former adjudication concludes parties and privies not only as to every matter offered and received to sustain or defeat the claim *but also as to every matter which might and should have been litigated in the first suit.*" (Emphasis added.) *Joyce v. Murphy Land etc. Co.,* 35 Idaho 549, 553, 208 P. 241, 242 (1922).

The rationale behind this long established rule has grown ever stronger with the evolution of modern systems of pleading and their free permissive joinder of claims, liberal amendment provisions and compulsory counterclaims.

As applied to the present case, the result is clear: when the partnership action (*Ramseyer I*) was filed in 1973, the 1969 exchange of property was completed; the decree of divorce between appellant and his wife had been entered; the sons had executed the mortgage on Antelope Springs Ranch with respondent Equitable Life; and appellant had received the community real property interests in the final property divi-

---

1. As stated in *Ramseyer I,* the avowed "purpose of the [partnership dissolution] was to minimize his community estate in view of a pending divorce action." As we commented there, "We know of no principle of community property law by which either spouse could achieve such a result," in view of the fiduciary duty the manager of the property owes to his spouse to account for all community property. 98 Idaho at 51, 558 P.2d at 80.

sion entered in the divorce action. The trial court in *Ramseyer I* held that Homer had no interest in or title to Antelope Springs Ranch and quieted title to the property in the sons. When Homer brought the present action to quiet title, partition and recover mesne profits in 1975, the state of facts giving rise to his claim had not changed. When he changed the label applied to his theory of recovery, the essential relief sought was no different from that sought in the partnership action. Accordingly, Homer's quiet title action was barred by the judgment in the partnership action, and the respondents' motions for summary judgment should have been granted for that reason. As was stated in *Treinies v. Sunshine Mining Co.*, 308 U.S. 66, 78, 60 S.Ct. 44, 51, 84 L.Ed. 85 (1939), "One trial of an issue is enough. 'The principles of *res judicata* apply to questions of jurisdiction as well as to other issues,' as well to jurisdiction of the subject matter as of the parties."

The order of the trial court granting summary judgment in favor of respondents and against appellant Homer F. Ramseyer is affirmed. Costs to respondents.

McFADDEN, C. J., and DONALDSON, SHEPARD and BAKES, JJ., concur.