Colin J. KELLY, Appellant,

v.

**Daren MILLER d/b/a Miller Company, Appellee.**

No. 3072.

Supreme Court of Alaska.

March 10, 1978.

R. Michael Jackson and Reginald J. Christie, Kay, Christie, Fuld & Saville, Anchorage, for appellant.

William H. Jacobs, Jacobs, Branson & Guetschow, Anchorage, for appellee.

## OPINION

Before BOOCHEVER, C. J., and RABINOWITZ, CONNOR and BURKE, JJ.

BURKE, Justice.

This is an appeal from a superior court judgment awarding appellee Miller the down payment on a tractor as damages for breach of contract.

On March 29, 1973, Colin J. Kelly and Jerry J. Ward, d/b/a K & W Company, a partnership, entered into an agreement with Daren Miller d/b/a Miller Company, by which Miller was to provide the equipment and labor to load sand and gravel in a sand and gravel pit operated by K & W. A few months later, on June 30, 1973, in an agreement signed by Miller and by Kelly, as partner in K & W Company, the parties terminated the March agreement. At that time, the parties also agreed that K & W owed Miller $28,838.32 for work done to that date and that K & W would purchase from Miller an International Harvester TD–25C Dozer at its original purchase price of $45,000. A down payment of $10,900 was due but not paid then.

Kelly and Ward's partnership terminated September 5, 1973, with Ward assuming the partnership's debts. They informed Miller of this arrangement by a letter of that date. Later, on September 30, 1973, Ward and Miller entered into an agreement which acknowledged K & W Company's debt to Miller of the $28,838.32, plus $10,900.00 for the purchase of the TD–25C. It was further agreed that Ward was to be responsible for payment of the $28,838.32.

Near the end of November 1973, the $28,-838.32 debt had been reduced to $17,584.12. However, neither the down payment of $10,900.00 nor the remaining purchase price on the TD–25C had been paid although K & W Company had been using the tractor in its business. Miller became delinquent on his own payments on the machine and on or about November 8, 1973, he repossessed it and returned it to his seller, the Carrington Company. In so doing, he lost his equity in the tractor.

On March 12, 1974, Miller filed suit against Kelly and Ward individually and as

partners in K & W Company. The first cause of action was for monies due and owing on the tractor.[1] The second claim concerned the prior sand and gravel contract. After a non-jury trial in superior court in December 1975, the trial judge held that Miller was entitled to the tractor down payment of $10,900 for breach of contract. Kelly was held liable for this down payment because Miller had not released him from the debt; Ward and K & W, however, were to pay one-half of the $10,900 to Kelly. The court held Ward liable for all other debts of the partnership, including the balance due on the $28,838.32 as well as other sums owing for Ward's use of the tractor after dissolution of the partnership.

Appellant Kelly challenges the superior court judgment on two grounds. First, he contends that the trial court's finding that he was not discharged from the $10,900 tractor debt was clearly erroneous. He asserts that any debt stemming from the purchase of the tractor was a partnership debt from which he was released by the dissolution of the partnership and the September 30, 1973, agreement between Ward and Miller. Second, Kelly argues that as a matter of law, Miller is not entitled to the $10,900 because he did not comply with the procedures set forth in the Uniform Commercial Code (UCC)[2] regarding sellers' remedies.

We agree with appellant's second argument and therefore find it unnecessary to determine whether he was liable as a partner for the $10,900 debt.[3]

When K & W failed to pay the $10,900 down payment on the tractor on June 30, 1973, or the remaining purchase price within a reasonable time, this was a breach of contract. At that point, Miller could have sued for the price of the tractor under AS 45.05.210(a)(1) [UCC § 2–709(1)(a)][4] and for any incidental damages resulting from the breach under AS 45.05.212 [§ 2–710].[5] Presumably he could have attached the tractor or other property of the defendants after the action was commenced. AS 09.40.010; Civil Rule 89. Then, following judgment, he could have executed on the property in order to satisfy his judgment. AS 09.35.010 *et seq.* Instead, Miller simply reclaimed the tractor without benefit of judicial process and disposed of it as he saw fit. He then sued for his remaining loss.

Our examination of the UCC reveals no section providing for a remedy such as that sought by Miller in this case. First, there is no provision in the Code for the type of self-help remedy which Miller initially chose, namely, reclamation of the tractor following its acceptance under the contract by K & W. Several sections of the sales portion of the Code (Article 2) do provide

1. In his complaint, Miller sets out a rather confused theory of recovery with regard to the tractor. At one point he alleges the existence of the contract of June 30, 1973, by which he agreed to sell and the defendants agreed to buy the TD–25C for $45,000. He then alleges that at the time of agreement, "the parties knew that if the sale was not consummated, K & W Company would have to pay a reasonable rental fee for the use of the Dozer." Following this, he alleges K & W's use and possession of the tractor, its breach of "said agreement" and its unwillingness and inability to purchase the tractor. He then prays for relief in the amount of $29,670.00 against the defendants. This figure is not explained but it appears to represent rent for K & W's use of the tractor between the time of the contract and Miller's repossession of it.

2. AS 45.05.002–45.05.794.

3. Ward did not appeal the superior court's judgment. Therefore our decision in this appeal regarding appellant Kelly's liability does not affect appellee's judgment against Ward.

4. AS 45.05.210 provides in relevant part:
   (a) If the buyer fails to pay the price as it becomes due, the seller may recover, together with any incidental damages under § 212 of this chapter, the price
   (1) of goods accepted   .   .   .

5. AS 45.05.212 states:
   Incidental damages to an aggrieved seller include commercially reasonable charges, expenses, or commissions incurred in stopping delivery, in the transportation, care, and custody of goods after the buyer's breach, in connection with return or resale of the goods or otherwise resulting from the breach.

for reclamation of goods but none are applicable here.[6]  Moreover, there is no Code provision which allows for recovery of damages once a party in Miller's position has in fact reclaimed contract goods.  Under AS 45.05.786 *et seq.* [§ 9–503 *et seq.*], such a remedy is available to a seller upon default by the buyer where the seller has retained a security interest in the goods sold.  However, there is no claim or evidence here that Miller retained a security interest in the tractor.

In other circumstances, Miller may have had a noncontractual remedy against Kelly and Ward such as an action in replevin.  Replevin is an action for goods wrongfully taken and it entitles a party to the return of the goods as well as damages for the value of the use of the goods during the period of detention.  *Rollins v. Leibold*, 512 P.2d 937, 944 (Alaska 1973).  However, a replevin action was not available to Miller here for Kelly and Ward's possession of the tractor was not wrongful.  Once the parties entered into the contract for the sale of the tractor and Kelly and Ward had unconditional possession of it, Miller was limited to contractual remedies for breach of the contract.

The UCC does not cover every aspect of contract law and where a situation arises which calls for application of legal or equitable principles not displaced by Code provisions, courts are free to use these supplemental principles.  AS 45.05.006.[7]  However, where the UCC does provide a specific and complete remedy for an actionable wrong, we will view its provisions as exclusive.  *See Prince v. LeVan*, 486 P.2d 959, 962 (Alaska 1971) (where specific UCC provisions are available to deal with a case, they should be applied).  AS 45.05.210 provided Miller the means by which he could have recovered damages from K & W for breach of their contract.  In repossessing the tractor without judicial process, Miller fashioned his own remedy and in so doing, forewent whatever damage claim he may have had against appellant.  Therefore, we hold that Miller's failure to seek the remedy provided him under AS 45.05.210(a)(1) combined with his resort to a remedy not recognized, so far as we have discovered, at either law or equity, precludes him from recovering damages for any loss he may have suffered as a result of K & W's breach of contract.

The superior court's judgment awarding Miller damages for breach of contract against appellant Kelly is REVERSED.[8]

MATTHEWS, J., not participating.

---

6.  AS 45.05.196 [§ 2–702], for example, allows a seller to reclaim goods within a specified period of time where the seller discovers that the buyer is insolvent.  However, there is no evidence here that Kelly or K & W were insolvent.  Moreover, even if K & W or Kelly were insolvent, this section provides that successful reclamation of goods excludes all other remedies with respect to such goods.  Similarly, AS 45.-05.144(b) [§ 2–507(2)] also may have allowed Miller to reclaim the goods in the proper circumstances.  Where a seller delivers goods conditional on payment and such payment is not made, it has been held that this section authorizes the seller to reclaim the goods.  *Greater Louisville Auto Auction, Inc. v. Ogle Buick, Inc.*, 387 S.W.2d 17 (Ky.1965).  *See* 2 R. Anderson, Uniform Commercial Code § 2–

507:8 (2d ed. 1971).  Again, the evidence does not show this section to be applicable here.

7.  AS 45.05.006 provides:
    Unless displaced by the particular provisions of this chapter, the principles of law and equity, including the law merchant and the law relative to capacity to contract, principal and agent, estoppel, fraud, misrepresentation, duress, coercion, mistake, bankruptcy, or other validating or invalidating cause, supplement its provisions.

8.  Our decision here makes it unnecessary for us to reach the attorney's fees issue raised by appellant.