669 P.2d 183

Stephen F. SCHWILLING,
Plaintiff-Respondent,

v.

Brunner HORNE, Defendant-Appellant.

No. 14225.

Supreme Court of Idaho.

June 2, 1983.

Rehearing Denied Sept. 26, 1983.

Frank T. Elam, Udell & Elam, McCall, for defendant-appellant.

William M. Killen, Killen & Pittenger, McCall, for plaintiff-respondent.

BAKES, Justice.

This is an appeal from an order of the district court denying defendant appellant's motion to strike a foreign judgment entered in Alaska and filed in Idaho pursuant to I.C. § 10–1301 *et seq.*

On October 24, 1979, Stephen Schwilling the plaintiff respondent, entered into an agreement with Brunner Horne, defendant appellant, for the purchase and sale of a small airplane, in which Horne agreed to sell the airplane in exchange for consideration consisting in part of a cash payment and in part of contract rights owned by Schwilling and his wife and brother. In addition to the agreement, the Schwillings executed a security agreement providing that the aircraft would be located in Adams County, Idaho.[1]

In August, 1980, appellant learned that the airplane had been taken to Alaska and, claiming that the terms and conditions of the sale and security agreement had been

1. The respondents filed an affidavit which had attached thereto a purported consent for the purchasers to remove the aircraft from Adams County to Central and South America. Appellant responded that his signature on the consent was forged.

violated, he requested the Adams County sheriff to contact state police officers in Alaska who confirmed the location of the airplane in Palmer, Alaska. Appellant then flew to Anchorage, Alaska, and engaged the assistance of Mr. Dave Klosterman, a representative of Alaska Bush Carriers, Inc., to repossess the aircraft. Appellant and Klosterman drove to Palmer, Alaska, and took possession of the airplane without the knowledge or consent of the respondent. Klosterman then flew the airplane back to Anchorage and met appellant, and appellant authorized the performance of certain maintenance work by Alaska Bush Carriers, Inc., necessary to transport the airplane back to Idaho.

Upon learning of the appellant's repossession, respondent retained counsel in Anchorage and commenced a civil action against appellant in the Superior Court of the State of Alaska, Third Judicial District of Anchorage, Case No. 3AN–30–5887. The amended complaint alleged that appellant was in breach of the contract of sale, that the dispossession of the airplane had caused respondent to suffer loss of employment contracts, and that respondent had been required to pay for the maintenance work authorized by appellant. In the prayer for relief, respondent prayed for recovery of the damages he had suffered as a result of being dispossessed of the airplane. Notice of the amended complaint in Case No. 3AN–30–5887 was served at appellant's residence in New Meadows, Idaho, and copies of the summons and complaint were allegedly left with appellant's wife. The Alaska court ordered that possession of the airplane be returned to respondent pending a final determination. On November 20, 1980, the Alaska court entered a Judgment by Default for the failure of appellant to either plead or defend.[2] The Alaska court awarded damages, costs and attorney fees against appellant and made permanent its

previous orders with regard to respondent's possession of the airplane.

Respondent then filed an inadequately authenticated copy of the Alaska default judgment as a foreign judgment in Valley County on December 29, 1980, as Case No. 2451. After a series of proceedings, including motions to vacate the judgment and to restrain execution of the judgment against appellant, respondent, pursuant to court order, filed a properly authenticated copy of the Alaska judgment pursuant to I.C. §§ 10–1301 *et seq.* on February 12, 1981.

Appellant subsequently filed a motion in Case No. 2451 to strike the entry of the Alaska judgment, alleging that Alaska did not have personal jurisdiction over him and that the judgment was therefore not entitled to full faith and credit. The Idaho district court determined that Alaska's long arm jurisdiction statute conferred jurisdiction over the appellant and that appellant had minimum contacts with Alaska so that maintenance of the Alaska suit did not violate due process and, in its Decision and Order filed on June 2, 1981, denied appellant's motion to strike the entry of the foreign judgment. Appellant appeals from that order pursuant to I.A.R. 11(a)(5).

The issue on appeal is whether the district court's denial of defendant's motion to strike a foreign judgment, which denial was based upon the court's determination as a matter of law that the Alaska court had personal jurisdiction over the defendant, was in error. For the reasons set forth below, we reverse and remand for further proceedings in the district court.

■■■ A valid final judgment entered in a state having jurisdiction over the parties and subject matter is entitled to full faith and credit in the courts of another state to the same extent it has by law in the courts of the state where the judgment was rendered. United States Constitution Art. 4, § 1; *Nevada v. Hall,* 440 U.S. 410, 99 S.Ct.

---

2. On October 1, 1980, subsequent to the commencement of the Alaska action, but prior to entry of the default judgment in that action, appellant commenced an action on the contract in the Fourth Judicial District of the State of Idaho as Case No. 2439. For a reason not shown in the record, no proceedings were had in that action, and it was apparently subsequently dismissed.

1182, 59 L.Ed.2d 416, *rehear. den.*, 441 U.S. 917, 99 S.Ct. 2018, 60 L.Ed.2d 389 (1979). A judgment of a sister state, however, is not entitled to full faith and credit in the foreign state, where such judgment would be void in the state in which the judgment was entered for lack of *in personam* jurisdiction. *Cf., Kremer v. Chemical Const. Corp.,* 456 U.S. 461, 102 S.Ct. 1883, 1898, 72 L.Ed.2d 262, *rehear. den.,* —— U.S. ——, 103 S.Ct. 20, 73 L.Ed.2d 1405 (1982) (states not required to accord full faith and credit to judgment rendered in another state which is constitutionally infirm); *Sierra Life Ins. Co. v. Granata,* 99 Idaho 624, 586 P.2d 1068 (1978) (judgment entered by court without jurisdiction over subject matter is void). *See generally* 47 Am.Jur.2d Judgments § 1236 (1969).

Appellant argues that the district court erred in denying his motion to strike the Alaska judgment because the Alaska court did not have personal jurisdiction over him, and a personal judgment rendered without *in personam* jurisdiction over a defendant is in violation of the due process clause of the fourteenth amendment of the United States Constitution and, hence, is void. *See Hess v. Pawloski,* 274 U.S. 352, 47 S.Ct. 632, 71 L.Ed. 1091 (1927); *Sierra Life Ins. Co. v. Granata, supra; Nalder v. Crest Corp.,* 93 Idaho 744, 472 P.2d 310 (1970) (rendition of judgment without jurisdiction is void); *Garren v. Rollis,* 85 Idaho 86, 375 P.2d 994 (1962) (personal judgment entered without service of process on defendant is void).

■ When a court is called upon to enforce a foreign judgment, "it may inquire into the jurisdictional basis of the foreign court's decree" to determine whether full faith and credit must be accorded. *Underwriters Nat'l Assurance Co. v. North Carolina Life & Accident & Health Ins. Guaranty Assoc.,* 455 U.S. 691, 102 S.Ct. 1357, 1365, 71 L.Ed.2d 558 (1982). Appellant apparently chose not to appear in the Alaska action either to defend on the merits of respondent's claim or to challenge the assertion of jurisdiction by the Alaska court. Therefore, the jurisdictional question has not been previously litigated, and the district

court in Idaho properly proceeded to determine the jurisdictional basis for the judgment entered by the Alaska court. *See Underwriters Nat'l Assurance Co. v. North Carolina Life, supra; Durfee v. Duke,* 375 U.S. 106, 111, 84 S.Ct. 242, 245, 11 L.Ed.2d 186 (1963) (although court may inquire into jurisdiction, where question of jurisdiction has been fully and fairly litigated and finally decided, judgment is entitled to full faith and credit).

■ A challenge to the jurisdiction of a state court over a non-resident defendant not personally served within the state involves a two part analysis. First, the defendant's alleged conduct must fall within the terms of the long arm statute in question; and, secondly, the defendant must have had minimum contacts with the forum so that assertion of jurisdiction through application of that statute will not violate defendant's right to due process of law guaranteed by the fifth and fourteenth amendments to the United States Constitution. *See International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945); *Modern Trailer Sales, Inc. v. Traweek,* 561 P.2d 1192, 1195 (Alaska 1977); *Jonz v. Garrett/Airesearch Corp.,* 490 P.2d 1197, 1199 (1971); *Schneider v. Sverdsten Logging Co., Inc.,* 104 Idaho 210, 657 P.2d 1078 (1983). The respondent argues that the appellant's activities within the State of Alaska are embraced by two separate subsections of Alaska Stat. § 09.05.015, which provides in part relevant to this decision:

"(a) A court of this state having jurisdiction over the subject matter has jurisdiction over a person served in an action according to the rules of civil procedure

. . . .

"(3) in an action claiming injury to person or property in or out of this state arising out of an action or omission in this state by the defendant;

. . . .

"(6) in an action which arises out of

"(C) a claim that the defendant return, restore, or account to the plaintiff for an asset or thing of value which was in this

state at the time the defendant acquired possession or control over it . . . ."

The district court focused upon Alaska Stat. § 09.05.015(a)(3) and noted that the phrase "injury to property" has been construed to mean "not much more than mere pecuniary loss." *See Fairbanks Air Service, Inc. v. Air Operations Intl. Corp.,* 378 F.Supp. 1405, 1406 (D.C.Alaska 1974). The district court stated that it was not questioned that plaintiff had suffered pecuniary loss as a result of defendant's actions in taking possession of the plane, namely loss of employment contracts and the cost of repairs, and concluded that "defendant's willful acts in dispossessing plaintiff of the airplane appear to be sufficient 'minimum contacts with (Alaska) such that maintenance of the suit does not offend traditional notions of fair play and substantial justice.' " Assuming that the district court correctly interpreted Alaska Stat. § 09.05.015(a)(3), as construed by Alaska courts, to include appellant's activities in Alaska, or that appellant's activity was encompassed by the conduct outlined by Alaska Stat. § 09.05.015(a)(6)(C), the next question is whether the district court improperly determined the existence of minimum contacts sufficient to satisfy the requirements of due process as a matter of law, rather than as a question of fact.

■ Alaska courts have held, as have courts in the majority of jurisdictions in relation to their own long arm statutes, including Idaho, that its long arm jurisdiction statute is to be interpreted as broadly as possible to extend jurisdiction to the maximum extent permitted by due process under the fourteenth amendment of the United States Constitution. *Jonz v. Garrett/Airesearch Corp., supra; Volkswagenwerk v. Klippan,* 611 P.2d 498, 500 (Alaska 1980), *cert. den.* 449 U.S. 974, 101 S.Ct. 385, 66 L.Ed.2d 236 (1980); *Akichika v. Kelleher,* 96 Idaho 930, 932, 539 P.2d 283, 285 (1975): *see e.g., Waterval v. Dist. Ct.,* 620 P.2d 5 (Colo.1980), *cert. den.* 452 U.S. 960, 101 S.Ct. 3108, 69 L.Ed.2d 971 (1981); *Cowan v. First Ins. Co. of Hawaii, Ltd.,* 61 Hawaii 644, 608 P.2d 394 (Haw.1980). The question of whether Alaska could properly assert personal jurisdiction over the appellant, then, depends on whether the assertion of such jurisdiction in this case would violate the due process clause of the fourteenth amendment.

■ In *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), the United States Supreme Court established that:

"[D]ue process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " *Id.* at 316, 66 S.Ct. at 158, *quoting Milliken v. Meyer,* 311 U.S. 457, 463, 61 S.Ct. 339, 343, 85 L.Ed. 278 (1940).

The test requiring that a non-resident defendant have sufficient minimum contacts with the forum state is not susceptible of mechanical application. *See Kulko v. Superior Ct. of Calif.,* 436 U.S. 84, 92, 98 S.Ct. 1690, 1697, 56 L.Ed.2d 132, *rehear. den.* 438 U.S. 908, 98 S.Ct. 3127, 57 L.Ed.2d 1150 (1978); *Intermountain Bus. Forms, Inc. v. Shepard Bus. Forms Co.,* 96 Idaho 538, 542, 531 P.2d 1183, 1187 (1975). Instead, it involves an *ad hoc* analysis of the facts of each case. *Fleet Leasing, Inc. v. District Court,* 649 P.2d 1074, 1079 (Colo.1982). Thus, the inquiry into whether appellant had sufficient minimum contacts with the State of Alaska such that maintenance of the suit did not offend " 'traditional notions of fair play and substantial justice,' " *see International Shoe Co. v. Washington, supra,* required a review of factors that bear upon the reasonableness of the Alaska court's assertion of personal jurisdiction.

■ Before a state may assert personal jurisdiction over a non-resident defendant, he must purposely avail himself "of the privilege of conducting activity within the forum state, thus invoking the benefits and protections of its laws." *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958): *see Schneider v.*

*Sverdsten Logging Co., Inc., supra.* "The extent of purposeful submission to the laws of the forum state necessary to satisfy this requirement, however, depends upon the nature of the activity giving rise to the suit." *Jones Enterprises, Inc. v. Atlas Service Corp.,* 442 F.2d 1136, 1140 (9th Cir. 1971). Indeed, essential criteria in all cases challenging the jurisdiction over a non-resident defendant are whether the quality and nature of defendant's activity is such that it is reasonable and fair to require him to conduct his defense in that state. *Kulko v. Superior Ct. of California, supra,* 436 U.S. at 92, 98 S.Ct. at 1697; *Insurance Co. of North America v. Marina Salina Cruz,* 649 F.2d 1266, 1270 (9th Cir.1981); *see Cowan v. First Ins. Co. of Hawaii, Ltd.,* 61 Hawaii 644, 608 P.2d 394 (Hawaii 1980). The burden on a non-resident defendant in requiring him to defend in a distant jurisdiction is to be considered in light of other relevant factors such as the interest of the forum state in adjudicating disputes, plaintiff's interest in obtaining a convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of several states in furthering fundamental substantive social policies. *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 292, 100 S.Ct. 559, 564, 62 L.Ed.2d 490 (1980), and authorities cited therein. The district court decision fails to disclose the consideration of any of the aforementioned factors in its determination as a matter of law that the Alaska court had personal jurisdiction over the defendant.

The appellant's activities within or connected to the State of Alaska that are related to this cause of action are limited to the following: appellant sought assistance from Alaska State Police officers in confirming the location of the airplane in Palmer, Alaska; appellant flew to Anchorage, Alaska, hired a representative of Alaska Bush Carriers, Inc., and together they drove to Palmer, Alaska, where appellant took possession of the airplane. At appellant's request, the representative flew the airplane to Anchorage, Alaska, where appellant authorized the performance of certain maintenance work necessary to prepare the airplane so it could be transported back to Idaho. The record does not establish the length of appellant's stay in Alaska or the existence of any prior or subsequent contacts with Alaska.

The appellant claims that the nature of his contact with Alaska, one of the factors to be considered in determining whether Alaska was entitled to assert personal jurisdiction over him, was merely a valid exercise of his right to self-help repossession under the security agreement executed in his favor in conjunction with the sale of the airplane. We note that at the time respondent executed the security agreement both Idaho and Alaska had adopted Section 9–503 of the UCC, which provides that a secured party may take possession of collateral without resort to judicial process upon default. *See* I.C. § 28–9–503 and Alaska Stat. § 45.05.786 (presently renumbered as Alaska Stat. § 45.09.503): *see also Massey Ferguson Credit Corp. v. Peterson,* 102 Idaho 111, 626 P.2d 767 (1980). We note that in *Akichika v. Kellerher,* 96 Idaho 930, 539 P.2d 283 (1975), we held that the terms of Idaho's long arm jurisdiction statute, I.C. § 5–514, did not encompass the conduct of a vendor of a truck in Oregon who subsequently came into Idaho and attempted a self-help repossession, and affirmed the trial court's ruling that it was without personal jurisdiction over the vendor. As stated above, both Idaho and Alaska construe their long arm statutes as broadly as possible to extend jurisdiction to the maximum extent permitted by due process. Therefore, consistent with our opinion in *Akichika,* if all that appellant did in Alaska was attempt a self-help UCC repossession, and if he had a valid legal right to do so, then that conduct alone would be insufficient to subject appellant to jurisdiction under the Alaska long arm statute.

However, even if entitled to effect a self-help repossession, a secured party may only exercise his right of self-help repossession so long as repossession may be accomplished without breach of peace. *See*

I.C. § 28–9–503 and Alaska Stat. § 45.05.-786. Whether possession occurred lawfully and without breach of peace is determined by the law of the jurisdiction where the collateral is located, *see Chischilly v. General Motors Acceptance Corp.*, 96 N.M. 264, 629 P.2d 340, 344 (N.M.App.1980), which, in this action, is the law of Alaska. *See, e.g., Kelly v. Miller*, 575 P.2d 1221 (Alaska 1978); *Kupka v. Morey*, 541 P.2d 740 (Alaska 1975); *Weaver v. O'Meara Motor Co.*, 452 P.2d 87 (Alaska 1969).

██ There is a conflict in the evidence set out in the affidavits and counter-affidavits in the record over whether or not respondents had breached the security agreement, and whether or not appellant was justified in attempting to exercise the UCC right of self-help repossession. These factual issues regarding the nature of appellant's contact with Alaska can only be resolved by trial, and the district court erred in deciding the case on the motions and affidavits with their conflicting factual allegations.

On remand, the district court, in determining whether appellant had sufficient minimum contacts with the State of Alaska, such that assertion of personal jurisdiction over the appellant does not offend "notions of fair play and substantial justice," is directed to consider the above mentioned factors, including the nature of appellant's contact with Alaska.

The judgment of the district court is reversed and the cause remanded for further proceedings. Costs to appellant; no attorney fees allowed.

DONALDSON, C.J., and SHEPARD and HUNTLEY, JJ., concur.

BISTLINE, Justice, dissenting.

Are we persuaded that the district court was in error? That is the question. I am presently not so convinced, and, in noting that the trial court on remand is directed to conduct a trial and consider certain factors, it seems to me that such factors were brought to the attention of and were considered by Judge Rowett. Two district judges, one each from Alaska and Idaho, have been satisfied that the Alaska court obtained jurisdiction of appellant. Accordingly, I disagree with the Court's statement that "the jurisdictional question has not been previously litigated." On the contrary, it has been *litigated*, although it was not *contested*. The Alaska district court, Judge Ripley, necessarily was required to pass upon that court's jurisdiction over a defendant who was personally served without the boundaries of Alaska. He obviously was convinced that the Alaska courts had acquired jurisdiction. It was not contested for the reason, as this Court's opinion rather well states it, that "Appellant apparently chose not to appear in the Alaska action either to defend on the merits of respondent's claim or to challenge the assertion of jurisdiction by the Alaska court." This was a matter of choice—purely a matter of choice. Earlier the appellant, again as a matter of choice, had made a concerted attempt—not at all restricted to self-help—to utilize and benefit from the services of Alaska law enforcement officers, and in turn hired an Alaska business firm to assist him in physically taking possession of the aircraft and flying it from Palmer to Lake Hood, Alaska, and thereafter performing maintenance services and security services.

The appellant chose those measures rather than choosing instead to retain counsel and utilize the Alaska judicial system. In so doing he clearly toyed with the possibility of thereby creating a breach of the peace such as might lead to bodily injury—in respect of which the case is similar to *Massey-Ferguson Credit Corp. v. Peterson*, 102 Idaho 111, 626 P.2d 767 (1981), where the creditor made off with equipment by cutting a chain or padlock—which the trial court erroneously (according to a majority of this Court) saw as conduct amounting to a breach of the peace. Then, when later served with the process of the Alaska court, the appellant's choice was to not appear.[1]

1. It has been suggested that Alaska is unique, because litigation there is expensive, and it is so far away as compared to other states. Litigation in Idaho, to my observation in reviewing

Until the recent release of the Court's opinion in *Duthie v. Lewiston Gun Club,* 104 Idaho 751, 663 P.2d 287, Supreme Court No. 13077, and its marked impact against prior Idaho case law on the doctrine of res judicata,[2] I would have thought that applicable here would be the language from another case which is also of recent origin:

"As was stated in *Treinies v. Sunshine Mining Co.,* 308 U.S. 66, 78, 60 S.Ct. 44, 51, 84 L.Ed. 85 (1939), 'One trial of an issue is enough. "The principles of *res judicata* apply to questions of jurisdiction as well as to other issues," as well to jurisdiction of the subject matter as of the parties.' "

*Ramseyer v. Ramseyer,* 98 Idaho 554 at 557, 569 P.2d 358 at 361 (1977).

The district court of Alaska *decided* that the state of Alaska had obtained jurisdiction over the appellant, and its determination of that issue is entitled to full faith and credit unless it can be said that Alaska's long-arm statute offends our notions of due process. I am not so offended, not on this record. Nor do I see that *Akichika* stands in the way. Self-help means exactly that: "self-help." No one would contend that a person engaging an attorney is indulging in self-help. Similarly, it is not self-help to instead use the free help of peace officers, and the paid help of pilots, or other agents.

Although the majority are apparently of the view that Judge Rowett did not fully consider all the factors which it is said that he should now consider in light of the Court's opinion, and while noting that his written memorandum is short and to the point,[3] there is no reason to indulge in sur-

awards of attorney's fees in trial courts and in this Court, is not inexpensive. And in Alaska a prevailing party can recover attorney's fees. Air travel to get there is an expense, but it is not likely that it would have cost appellant more to go there for a trial than it cost him when he went there to obtain return of the airplane. In addition, paragraph 7.06 of the Security Agreement provides:

"Debtor agrees to pay on demand the amount of all expenses reasonably incurred by Secured Party in protecting or realizing on the property. In the event that this Security Agreement or any obligation secured by it is referred to an attorney for protecting or defending the priority of Secured Party's interest or for collection or realization procedures, Debtor agrees to pay a reasonable attorney's fee, including fees incurred in both trial and appellate court, or fees incurred without suit, and expenses of title search and all court costs and costs of public officials. The sums agreed to be paid in this subparagraph shall be secured hereby; .... "

2. Those attorneys and judges who would prefer to perpetuate jurisprudence as a science will at this point observe with interest that the Court opinion cites *Durfee v. Duke,* 375 U.S. 106, 111, 84 S.Ct. 242, 245, 11 L.Ed.2d 186 (1963). There is a passage in *Durfee v. Duke* which simply is stood on its head by the *Duthie* opinion, and which if applied in *Duthie* would have precluded the Court from abandoning its sound earlier opinion. I quote from *Durfee:*

" 'Public policy,' said the Court, 'dictates that there be an end of litigation; *that those who have contested an issue shall be bound by the result of the contest; and that matters once tried shall be considered forever settled as*

*between the parties.* We see no reason why this doctrine should not apply in every case where one voluntarily appears, presents his case and is fully heard, and why he should not, in the absence of fraud, be thereafter concluded by the judgment of the tribunal to which he has submitted his cause.' "

*Durfee v. Duke,* 372 U.S. at 111–112, 84 S.Ct. at 245 (emphasis added) (quoting from *Baldwin v. Iowa State Traveling Men's Association,* 283 U.S. 522, 525–26, 51 S.Ct. 517, 518, 75 L.Ed. 1244).

The *Treinies* case cited in our *Ramseyer* case, *infra,* was also mentioned in *Durfee v. Duke:*

"In Treinies, the rule was succinctly stated: 'One trial of an issue is enough. "The principles of *res judicata* apply to questions of jurisdiction as well as to other issues," as well to jurisdiction of the subject matter as of the parties.' 308 U.S., at 78, 60 S.Ct. at 51, 84 L.Ed. 85."

*Id.,* 372 U.S. at 113, 84 S.Ct. at 246.

Some may wonder if a court which has just released the *Duthie* opinion is not to some extent embarrassed when a few days later it cites a case such as *Durfee* which contains a multitude of authority illustrating that *Duthie* is without precedent or substance.

3. Recently the Court reversed the Industrial Commission for not spelling out its reasoning in passing on a motion. *Gomez v. Argonaut Insurance Co.,* 137 Idaho 337, 670 P.2d 42 (1983) (Sup.Ct. No. 14248, released May 16, 1983). There, as here, briefs were in the appeal record, and it was easily ascertainable that the Commission simply saw no merit in Argonaut's motion. In dissent, I pointed out that 50 times a year this Court rules on petitions for rehear-

mise that he did not fully consider the affidavits and briefs of counsel which are in the appeal record which record also includes the statutory laws of Alaska plus case law set forth in the Court's opinion, notably among the latter being *Fairbanks Air Service, Inc. v. Air Operations, Int'l, Volkswagenwerk v. Klippan,* and *Morrow v. New Moon Homes.*

In my view the *Durfee* case contains a statement which is or should be dispositive of the proposition now before us. That proposition, at least as the Court sees it, is whether Judge Rowett made a sufficiently proper inquiry into the Alaska court's determination of its jurisdiction over appellant. The statement from *Durfee* is this:

> "However, while it is established that a court in one State, when asked to give effect to the judgment of a court in another State, may constitutionally inquire into the foreign court's jurisdiction to render that judgment, the modern decisions of this Court have carefully delineated the permissible scope of such an inquiry. From these decisions there emerges the general rule that a judgment is entitled to full faith and credit—even as to questions of jurisdiction—*when the second court's inquiry discloses that those questions have been fully and fairly litigated and finally decided in the court which rendered the original judgment.*" 375 U.S. at 111, 84 S.Ct. at 245 (emphasis added).

It seems eminently clear to me that the inquiry of the second court, namely Judge Rowett, disclosed that the first court, namely Judge Ripley, fully and fairly litigated the jurisdictional issue, and, insofar as this Court is concerned, that should be the end of our inquiry.

I am not unaware that the Supreme Court of the United States makes the distinction, as do I, between *contesting* and *litigating.* For certain, a stronger case is

made where an issue has been contested. But, in those situations where a court must make some inquiry in order to ascertain its own jurisdiction, as is surely so in long-arm situations, jurisdiction has been litigated. The opportunity to have it contested as well was declined.

ing or for review of Court of Appeals decisions, and no reasoning is thought necessary or stated. Just four days after *Gomez* was released, the Court again denied a petition for rehearing in the *Duthie* case—but there was no statement

offered by the Court which informed the petitioner, or anyone, how the Court reasoned around granting an extremely persuasive petition and a supporting brief abundantly fortified with Idaho precedent.