792 P.2d 905

**William SULLIVAN, Cleon Sullivan and Julie Sullivan, Plaintiffs–Respondents,**

v.

**ALLSTATE INSURANCE COMPANY, an Illinois Corporation, Defendant–Appellant.**

**No. 17029.**

Supreme Court of Idaho.

Feb. 15, 1990.

On Denial of Rehearing June 20, 1990.

---

Hawley, Troxell, Ennis & Hawley, Boise, for defendant-appellant. Kenneth C. Howell, argued.

Aherin & Rice, P.A., Lewiston, for plaintiffs-respondents. Darrel W. Aherin, argued.

1989 OPINION NO. 64 FILED MAY 2, 1989, IS HEREBY WITHDRAWN AND THIS OPINION SUBSTITUTED THEREFOR

## ON REHEARING

BOYLE, Justice.

This is an appeal from an order denying defendant Allstate Insurance Company's motion for summary judgment. Appellant, Allstate Insurance, asserted below and here that our decision in *Sullivan v. Allstate Ins. Co.*, 111 Idaho 304, 723 P.2d 848 (1986) (Sullivan I) is res judicata as to all claims arising out of the September 22, 1982 accident in which Julie Sullivan was injured. Allstate's motion for summary judgment in this action was denied on grounds that the question of Allstate's alleged bad faith settlement practice had not been previously litigated, and was not ripe for consideration in the earlier proceedings. We reverse.

Claimant, Julie Sullivan, was a pedestrian at the time she was struck by a uninsured motorcyclist on September 22, 1982. As a minor, Julie was covered by her parent's automobile insurance policy with Allstate which provided medical and uninsured motorist coverage. After the accident, the Sullivans filed a claim with Allstate for medical expenses in the amount of $2,000.00 and claimed entitlement to uninsured motorist benefits under the policy. Allstate paid the policy limits for medical bills, but denied responsibility under Sullivan's uninsured motorist coverage, asserting that Julie was the proximate cause of her own injuries.

The Allstate insurance policy, defining the parties' rights and responsibilities, contained a mandatory arbitration clause which provided that submission to arbitration was mandatory whenever the parties could not amicably settle a claim. Sullivan did not file for arbitration until April 1984, a time lapse of more than eighteen months after the accident. While the arbitration proceeding was pending, and notwithstanding the policy provisions requiring mandatory arbitration, Sullivans filed their civil action which was appealed in *Sullivan I,* asserting negligent investigation, the tort of outrage, willful breach of contract, and bad faith in refusing to settle the claim. Allstate moved for summary judgment, or in the alternative, for stay pending the outcome of arbitration. The district court (Judge Magnuson) granted Allstate's motion for summary judgment and dismissed Sullivans' complaint with prejudice. Sullivan objected to the dismissal with prejudice and the case was brought before the court for hearing on motion for reconsideration. At the hearing, the arbitration award was presented to the court and the district court reaffirmed his intent to dismiss the action with prejudice. Thereafter the action was dismissed by written order which clearly provides that the complaint, and thus all actions pled, was dismissed with prejudice. The concluding paragraph of the order of the trial court which was appealed in *Sullivan I* provides:

IT IS HEREBY ORDERED that Defendant's Motion for Summary Judgment is hereby granted and Plaintiffs' Complaint is hereby *dismissed with prejudice* and without costs or attorneys' fees to either party. (Emphasis added.)

In *Sullivan I,* 111 Idaho 304, 306, 723 P.2d 848, 850 (1986), this Court, in a unanimous opinion, affirmed Judge Magnuson's dismissal with prejudice, stating:

Under the circumstances of today's case we need not decide the legal relationship which exists between an insured and an insurance carrier when the injured makes a claim under an uninsured motorist clause of an insurance policy, i.e., whether that relationship is adversarial or fiduciary.... In the instant case we deem it clear that Allstate's denial of liability upon the grounds that Julie Sullivan's own negligence was the proximate cause of her damages, was not taken in bad faith. The uncontested finding of the arbitrators of thirty-five percent negligence on the part of Julie Sullivan speaks loudly in defense of the position of Allstate.

111 Idaho at 306, 723 P.2d at 850.

Following the appeal in *Sullivan I*, Sullivans filed the instant action (*Sullivan II*), asserting claims arising from the identical events alleged in *Sullivan I*. Each of those claims for relief in *Sullivan II* have as their predicate Allstate's denial of the initial claim for uninsured motorist benefits. The only additional matter alleged in *Sullivan II* is the existence of the award of the arbitrators, which as above-noted, was before the district court prior to its order of dismissal in *Sullivan I*. Allstate moved for summary judgment in *Sullivan II* on the basis that our decision in *Sullivan I* was res judicata. That motion was heard before Judge Cogswell and denied. This appeal followed.

However, certain uncontroverted facts and events in the record require reversal. The accident in question occurred on September 22, 1982. In April 1984, Julie Sullivan, having obtained her majority, sought and obtained an arbitration award from Allstate. A hearing was held before three arbitrators who found total damages, found Julie to be thirty-five percent comparatively negligent, and found Allstate should pay Julie its policy limit. The complaint in *Sullivan I* was filed September 4, 1984, while arbitration was pending and before the arbitration process was completed. In May 1985 the award of the arbitrators was rendered. The Sullivans moved for reconsideration of the court's order of summary judgment and all matters, in-cluding the award of the arbitrators, were then before the district court. Judge Magnuson denied the motion for reconsideration of his order granting dismissal with prejudice and affirmed his motion granting summary judgment to Allstate.

The record clearly establishes that before Judge Magnuson issued his final opinion granting summary judgment and dismissing the plaintiffs' complaint *with prejudice*, the final award of the arbitrators was presented and argued to him. The record is uncontroverted that Judge Magnuson reviewed and considered the award of the arbitrators *before* he entered his final order on summary judgment, and only then did he order dismissal *with prejudice*.

Res judicata, or claim preclusion as it is sometimes called, "denotes that a valid final judgment by a prior court, between the same parties or their privies, concludes the litigation as to all matters that were or should have been litigated in the first action." *Puckett v. City of Emmett*, 113 Idaho 639, 641, 747 P.2d 48, 50 (1987). *See also Ramseyer v. Ramseyer*, 98 Idaho 554, 569 P.2d 358 (1977). Sullivans' claims against Allstate presented in the complaint filed in *Sullivan II* are identical to those presented in the complaint filed in *Sullivan I*. The dismissal of the complaint with prejudice in *Sullivan I*, which was affirmed on appeal, results in these claims between the identical parties being barred by res judicata.

For the above reasons we reverse the order of the district court denying summary judgment and remand with instructions to enter judgment in favor of appellant Allstate.

BAKES, C.J., and JOHNSON and McDEVITT, JJ., concur.

BISTLINE, Justice, dissenting.

On further review and detailed analysis of this Court's decision in *Sullivan I*, and the appeal record in that case, it is seen that this Court's holding there is found in one sentence: "In the instant case we *deem* it clear that Allstate's denial of liability upon the grounds that Julie Sullivan's

own negligence was the proximate cause of her damages, was not taken in bad faith." *Sullivan v. Allstate Ins. Co.,* 111 Idaho 304, 306, 723 P.2d 848, 850 (1986) (emphasis added). The reason for that deemed holding is found in the sentence which follows the one quoted above, "The uncontested finding of the arbitrators of 35 percent negligence on the part of Julie Sullivan speaks loudly in defense of the position of Allstate." *Id.* However, and unfortunately, these supposed issues which our opinion passed on were different from the issue raised on appeal.[1] The issue raised on appeal was whether the district court was correct in two rulings *which were the basis of dismissal* of the complaint. Those two rulings surfaced in this Court's *Sullivan I* opinion, and one of them was the basis for the district court's order of summary judgment of dismissal of the plaintiffs' complaint.

Mentioning again that I am reviewing the appeal record in *Sullivan I,* the exact language of the district court's order upon which dismissal was predicated, was this:

1. A cause of action based upon an insurer's refusal to pay an uninsured motorist's claim cannot exist until the liability of the uninsured motorist is admitted or adjudicated and the insurer *then* refuses to pay the claim.

. . . .

3. The insured should be required to first go through arbitration of an uninsured motorist claim, as required by the automobile policy, prior to bringing an action against the insurer for a bad faith claim.

(Emphasis added.) Our *Sullivan I* opinion was erroneously written as though we were affirming a district court determination that had been made on the merits, *i.e.,* that Judge Magnuson had found Allstate free of the liability alleged in the plaintiffs' complaint.

Judge Cogswell, whose opinion and decision we review in this case now before us, examined *Sullivan I* and came to this conclusion:

The Court can only interpret the decision of Judge Magnuson to hold that the Complaint in Case No. 23040 was prematurely filed and that a cause of action had not then arisen because of the arbitration proceedings.

Judge Cogswell was eminently correct in his evaluation. Judge Magnuson did not feel that the issues of Allstate's alleged liability were properly before him; hence the dismissal. It is also of considerable moment that his memorandum decision did not say that dismissal would be with prejudice. Rather the final formal judgment of dismissal was drawn and presented by Allstate's counsel, and there for the first time appeared the words "with prejudice." Judge Magnuson may or may not have noted counsel's presumptiveness in adding the two words which were added. Because he had adjudicated nothing other than that the action was prematurely brought, whether the action was dismissal with or without prejudice was undoubtedly thought to be of no consequence.

A circumstance similar to this would be the filing of a medical malpractice case absent complying with the provisions of Chapter 10 of Title 6, Idaho Code, which requires submission to a screening panel for its review of the medical or hospital care which *would* be challenged in a tort action, "which proceedings shall be informal and nonbinding, *but nonetheless compulsory as a condition precedent to litigation.*" I.C. § 6–1001 enacted in 1976, ch. 278, p. 953 (emphasis added). Judge Magnuson was undoubtedly aware of this statutory requirement, and it is reasonable to believe that he had its salutary purposes in mind when he ruled that the Sullivan plaintiffs were premature in the various claims which were laid out by their counsel in the

---

1. Justice Shepard was inadvertently indulging in *obiter dictum.* In review and retrospect, it is obvious that he did see and peruse the arbitration award which, as illustrated hereinafter, played no part in the district court's determination that the case should be dismissed because it was prematurely filed. On the very last day that the case was tangentially in front of the district court, the arbitration award was produced at the eleventh hour. *Infra,* at 888, 792 P.2d at 913.

*Sullivan I* complaint, filed before there had been any determination of Allstate's alleged liability, either by adjudication or arbitration. This Court noted in *James v. Buck*, 111 Idaho 708, 727 P.2d 1136 (1986), that the purpose of the legislature in enacting Chapter 10 of Title 6, Idaho Code, was:

> To encourage nonlitigation of claims against physicians and hospitals by providing for prelitigation screening of such claims by a hearing panel as provided in this act.

111 Idaho at 712, 727 P.2d at 1140. For certain a complaint for medical malpractice which is filed without complying with I.C. § 6–1001 would be subject to dismissal. Just as equally certain, that dismissal would be subject to a bar in *res judicata if a second* such action was filed without complying with I.C. § 6–1001. Such dismissal would not bar a subsequent action brought to litigate claims of liability *after* there had been full compliance with Chapter 10 of Title 6, Idaho Code. Similarly, an action brought to obtain a monetary judgment on a promissory note would be dismissed if the note was not yet due. Absent the condition of the note being due, the dismissal would be adjudicative of nothing but that the action had been prematurely brought.

The Court's opinion goes far astray in its conclusion that because *"Sullivan I* was dismissed with prejudice" the *Sullivan II* complaint containing "identical allegations" made as between "identical parties" is barred by the doctrine of *res judicata.* The Court arrives at such wrong destination by a very poor reading and comprehension of the record which, although it is voluminous and parts of it are out of chronological order, is not difficult.

Julie Sullivan was injured on September 24, 1982, and the action was filed on September 29, 1984, which was shortly after she demanded arbitration, as appears in the affidavit of Mr. Eismann. R. 63. Mr. Eismann's affidavit attached the arbitration agreement which was signed by Julie Sulli-van (and duly acknowledged) and by an agent for Allstate (and duly acknowledged), respectively on April 16 and May 23, 1984. R. beginning at 65. Mr. Eismann's affidavit with attachment was filed in support of and in conjunction with an Allstate motion for summary judgment, or for a stay of proceedings

Out of order in the record,[2] but nevertheless contained therein is Mr. Eismann's supporting brief. R. 173–83. At page 181, the brief convincingly argued to Judge Magnuson that:

> Had there been an issue as to whether the arbitration clause was induced by fraud or otherwise not valid, it would be the duty of the plaintiff to raise only this issue before a court. A recent case in Washington concluded that if the system of arbitration is to be meaningful, the plaintiff must submit all disputes within the contemplation of the contract, except for the issue of fraudulent inducement to agree to arbitration. *Allison v. Medicab, International*, 92 Wn.2d 199, 203, [597] 509 P.2d 380 (1979).
>
> . . . .
>
> In the case at bar, a reading of the contract and case law leads to the conclusion that the cause of action presented by the plaintiff is within the contemplation of the arbitration provision. Since this cause of action arose out of the contract, the inclusive language of the contract would require that all issues be presented to arbitration. (Citations omitted.)

R. 181–82.

The order granting summary judgment, drawn by Mr. Eismann at the court's direction, quite naturally reflected that which he had urged and with which the court agreed, *i.e.*, the agreement to arbitrate precluded a trial of the issues which Julie Sullivan's complaint raised against Allstate. R. 142–43. The action was dismissed with prejudice but without costs or attorneys' fees to either party on April 29, 1985. R. 143. Notwithstanding that dis-

---

2. The brief, though dated December 21, 1984, was not filed as part of the record until June 26, 1985. Similarly, the plaintiff's brief was also filed June 26, 1985, both being filed after the appeal was taken.

missal, and that it had been filed of record on April 30, 1985, dedicated counsel for Julie Sullivan filed and served an affidavit of his own in opposition to the order, and on May 23, 1985, restyled as a motion for reconsideration of the memorandum decision and ensuing order of dismissal, submitted a thorough memorandum well fortified with citation.

The motion for reconsideration was heard on May 23, 1985, at Coeur d'Alene, Idaho, lasting from 2:20 p.m. to 2:55 p.m. The court minutes best tell what took place:

## MOTION TO RECONSIDER

*BE IT KNOWN that the following proceedings were had, to-wit:*

2:20 P.M. Court is in session. Call 23040. Counsel are present to argue a motion in this Bonner County case. Motion to Reconsider refers to the Court's Order of 4/16/85.

Mr. Manko offers Exhibit # A. Mr. Eismann states that he received Mr. Manko's brief at 11:30 A.M. this date. He has no objection to Exhibit # A and therefor the COURT ADMITS *EXHIBIT # A for purposes of this hearing.* Mr. McClenan advises that he received a certified copy of the Order at 10:30 A.M. this date.

2:32 P.M. Mr. Manko argues pursuant to the arbitration decision now in favor of Plaintiff. Questions rather the Court held no cause of action for bad faith or no cause of action maintained at all. Cites Carter case as set out in brief.

Mr. Eismann provides copies of decisions holding no cause of action under bad faith re: 41–1320.

2:45 P.M. The Court reviews those decisions.

*Mr. Eismann further responds.*

The Court will not take any judicial notice of House bill 193. It is not a factor in a determination made today.

2:55 P.M. The COURT DENIES THE MOTION FOR RECONSIDERATION

3. Not to be confused with the arbitration provision of the insurance contract, or with the

and turns to the next matter on the docket.

R. 153–54 (emphasis added). The reporter's transcript is somewhat more informative, but not sufficiently to justify any conclusion other than that Judge Magnuson was convinced that the action was prematurely filed. In no way whatever did Judge Magnuson say, or even intimate, that the much belated presentation to him of the arbitration award [3] caused him to reassume jurisdiction over an action *which he had dismissed because it had been prematurely filed.* Otherwise put, he was not inclined to do any more than any judge would do at that late time—examine it out of curiosity—but stand by the dismissal which had long ago been entered. As pointed out earlier herein, the dismissal was *res judicata* of nothing, but was plainly and visibly predicated upon the motion which Mr. Eismann had made on behalf of Allstate. To intimate, as the majority does, that the belated presentation of an arbitration award reinstated an action which had been dismissed as prematurely filed does a great disservice to an experienced and able trial judge who had the appeal record and transcript at hand, and ruled otherwise.

Only after the court convened at 2:30 p.m. to hear the motion for reconsideration was the court made aware that the arbitration award had been made. This was on being advised by one of the counsel present that it had been just received that day in the morning mail. The court was asked to look at it, did look at it, and allowed it to be marked as an exhibit, and quickly put all that aside: "THE COURT: It appears that no one had notice of it before today, so we will operate on who is going to argue the Motion for Reconsideration." The most use made of the arbitration award was by plaintiffs' counsel:

The plaintiffs in fact have prevailed in the arbitration, and it removes in my opinion the problem of not having a litigated liability situation at the time of the Complaint when this matter was originally argued.

agreement to submit the debate to arbitrators.

So, for that reason, I am somewhat confused as to the Court's order.

Tr., Vol. I, 5. The trial court at that late stage could hardly be expected to wipe the slate clean and make a holding that this late development invalidated its order that the action had been prematurely filed because of the lack of compliance with that condition precedent to bringing suit.

By nature kind and courteous, he heard counsel out to their satisfaction, following which the court stated it had reviewed its memorandum decision, reviewed the plaintiffs' brief supporting the motion for reconsideration, "and upon reflecting, I am going to stand by my original decision." Tr., Vol. I, 13. He added that he found Mr. Eismann's decisions, brought into court that day interesting, but that in all candor the determination to stand by his decision had been made before he had been made aware of them: "[w]hat I meant to do by the decision is to dismiss the action." Tr., Vol. I, 13.

## ON DENIAL OF RESPONDENTS' PETITION FOR REHEARING

BISTLINE, Justice, On Denial of Respondents' Petition For Rehearing.[1]

Putting aside what I wrote in February of this year, I have started anew with Justice Shepard's opinion in *Sullivan I*, and tracked through the case down to and including Judge Magnuson's dismissal order, and beyond into our opinion of May 2, 1989, following the first hearing at which the Court membership was comprised of Justices Bakes, Shepard, Huntley, Johnson, and Judge Towles, sitting Pro Tem. On rereading Justice Huntley's opinion, it is seen that his views were soundly presented, with Justice Johnson and Judge Towles accordingly concurring. Both Justices Shepard and Bakes dissented, seizing onto the words "with prejudice" which they ·do without any regard for the highly singular fact that in writing his own decision, Judge Magnuson carefully stated *HIS* grounds for dismissing, which only had to do with the action being brought prematurely, and

*he did not use the words "with prejudice."* In drawing the order of dismissal, facially it appears that chief counsel for Allstate inserted those two words. Nothing in the record shows that counsel advised the Judge that counsel had taken the liberty of inserting those two words. If that be true, counsel was either extremely presumptuous or careless. Moreover, where the dismissal was based on failure to have completed arbitration, the only effect of "with prejudice" would be to bar a subsequent action attempting to get into the good faith issue without passing through arbitration.

The Court has audaciously withdrawn Justice Huntley's opinion. Three votes can do such a thing, and there are four votes. Those in that majority in my view are all too willing to accept as gospel two statements which are totally unacceptable, both at page 2 of the majority slip opinion. First, there is the statement that: "The district court granted Allstate's motion for summary judgment and dismissed Sullivans' complaint with prejudice." The glaring fault in that statement is in *leaving the reader with the clear impression that Allstate "moved to dismiss with prejudice."* Nothing could be further from the truth. The record is before us, and I have read the Allstate motion. Second, there is the statement that at the reconsideration hearing "the district court reaffirmed his intent to dismiss the action with prejudice." If Justice Boyle or anyone can show me something to sustain the veracity of that statement, I shall consider abjectly and humbly withdrawing from further participation in this particular case. Judge Magnuson's comprehensive and well-thought out memorandum decision did not contain any "intent" language, nor did he at the reconsideration hearing state anything whatever relative to reaffirming an intent to dismiss with prejudice. Additionally, reviewing Allstate's extremely well-written respondent's brief in *Sullivan I*, at page 6, discloses this statement: "Ultimately, the court granted Allstate's motion for summa-

---

**1.** In a final effort to dissuade my brothers on the Court from the error of their ways, it is concluded that sheer repetition may bridge the communication gap.

ry judgment, R. Vol. III, 127, *and entered an order accordingly*, R. Vol. III, 142." Obviously, competent counsel read the order as did Judge Magnuson, namely at a glance, and taking for granted that trial counsel would indeed have drawn an order which was according to Judge Magnuson's direction, and in the eyes of both beholders—the judge and the brief writer—"with prejudice" went unnoticed.

The district judge, whose trial court determination four members of this Court have precipitately reversed, may be chagrined to learn from them how he (and I) misread the Queen's English. Speaking of Allstate's motion for summary judgment, the Court's opinion would have its readers believe that there was *not* any intervention of defense counsel's inadvertent or diabolical hand involved in the manner of the termination of *Sullivan I*, "[t]he district court (Judge Magnuson) granted Allstate's motion for summary judgment and dismissed Sullivan's complaint with prejudice." As I have taken pains to point out, beginning some time ago (February 15, 1990), "that ain't the way it happened." The district court, Judge Cogswell, had before him the clerk's record and the same transcripts as are available to the five of us, and undoubtedly finds it remarkable that, as the Court says it happened, "Sullivan objected to the *dismissal* with prejudice...." I feel certain that Judge Cogswell would join me in noting that there was no such unitary act of dismissing with prejudice, and that "Sullivan objected ..." simply did not happen.

Judge Magnuson's memorandum decision was dated April 16, 1985. *Three days thereafter* Sullivan's counsel filed a *motion*, not an objection, with the court, and that motion was to reconsider (in that one respect the majority commendably reads the record accurately) its memorandum decision, "*and to delay entry of the Order on Summary Judgment*, for the reasons that the *defendant* had requested this matter be stayed pending an arbitration which has not yet been completed, and the matter herein is premature." R. 138 (emphasis added). That one and only motion made no mention of a dismissal with prejudice, or that it was objected to by plaintiff.

Making the majority's lack of conversancy with the record all the more remarkable, it was apparently a full eleven days later that Allstate's counsel placed on the desk of Judge Magnuson the order which counsel had drafted but which was *not* according to the court's direction, which puts me poles apart from the other justices. This is not mere nitpicking, but serious business. Any attorney knows that we win some, and we lose some—all in the name of the game. But when a loss is suffered, it comes with poor grace to be confronted with such a misportrayal of the record as is so glaringly visible here. The district judge, whose correct decision is being carelessly overturned, cannot be overly pleased on learning that the facts and circumstances as set forth in the record can be, by judicial divine right, distorted so that an opinion will read very smoothly indeed.

The Court's first opinion in this case issued on May 2, 1989. As pointed out by Justice Huntley in that opinion, the case had been before us one prior time. *See Sullivan v. Allstate Ins.*, 111 Idaho 304, 723 P.2d 848 (1986). The Court's 1986 opinion reflects the following facts: Julie Sullivan's injuries on being struck by an uninsured motorist were found by three arbiters to total $292,851.13; her share of negligence was set at 35 percent; and the uninsured motorist's share of the negligence then would be 65 percent. Allstate's uninsured motorist coverage was a maximum exposure of $20,000, which it paid on receiving the award of the arbiters, it also paid $2,000 under the medical payments coverage of the same policy (purchased by Julie's parents). While the arbitration process was going on, the Sullivan parents and Julie brought an action against Allstate, alleging negligence in the handling and investigation of the Sullivans' claim, plus bad faith as to its responsibilities, with resultant emotional distress visited upon the Sullivans. Allstate moved the district court, Judge Magnuson, for summary judgment of dismissal, or alternatively for entry of a stay order until the arbitration process was concluded.

The ruling of Judge Magnuson as reported by Justice Shepard was:

**The district court initially granted the motion for summary judgment, concluding that where an insurance policy requires arbitration in the event of disagreement involving an uninsured motorist claim, an insured is required to pursue arbitration prior to bringing an action against the insurer. We do not disagree.**

*Sullivan*, 111 Idaho at 305, 723 P.2d at 849 (emphasis added). On any reading of the foregoing, it is clear beyond cavil that this Court upheld Judge Magnuson's dismissal of the action, and that this Court then and there further understood that the dismissal was predicated upon the premature filing of the Sullivans' action before the arbitration process was concluded.

For unknown reasons, Justice Shepard being in an expansive mood, he wrote on and on with a general discussion of the law regarding uninsured motorist coverage in first party insurance contacts or policies, finally concluding that: "In any event, the Sullivans do not here contest the arbitrator's finding of 35 percent negligence on the part of Julie Sullivan ... we deem it clear that Allstate's denial of liability upon the grounds that Julie Sullivan's own negligence was the proximate cause of her damages, was not taken in bad faith." *Sullivan I*, 111 Idaho at 306, 723 P.2d at 850. In retrospect, I deem that four justices who joined that opinion were guilty of indifference in not suggesting or requiring that the opinion terminate with this Court's conclusion that the summary judgment was correctly entered. In particular, Justice Shepard was correct in stating as holding "that the trial court was correct in issuing summary judgment in the absence of any genuine issue of material fact...." 111 Idaho at 307, 723 P.2d at 852. The balance of that sentence was *not* holding: it was gratuity, and not required to reach the holding which was reached.

As to Justice Shepard's observation that "the Sullivans do not here contest the arbitrator's finding of 35 percent negligence on the part of Julie Sullivan," it is correctly stated. 111 Idaho at 306, 723 P.2d at 850. Counsel for the Sullivans did not on their appeal contest or in any way challenge that observation; they were not that inept. Having not challenged that finding of the arbitrators in district court proceedings, counsel knew that it could not be raised for the first time at the appellate level. Case law is abundant for that proposition. Moreover, the total damages were staggering, and, had Allstate sold uninsured motorist coverage up to $100,000, it would have found itself picking up the tab for almost $90,000.

The arbiters arrived at total damages of $292,851.00, and Julie's share of comparative negligence was set at 35 percent, so that left 65 percent chargeable to the uninsured motorist, with a net recovery to Julie of 65 percent of the total, which computes out to $190,353.15. Allstate's limitation of coverage was $20,000, making it all the more understandable why the Sullivans and their counsel believed that Allstate's delay in paying its limits was based on nothing but refusing to investigate and arrive at a damage total, which coupled with its delay was a good example of insurance company bad faith.

Moreover, there was no opportunity to challenge that finding, and no challenge was made. One need only pause to examine the brief which counsel for Allstate provided to Judge Magnuson to understand that there was no reason whatever for Justice Shepard's insertion in his opinion that on the appeal the Sullivans' made no contest to the 35 percent of negligence which the arbitrators assessed against Julie: *"In the alternative, we submit that until the pending arbitration hearing is complete and liability is adjudicated or admitted, defendant insurer has no duty to the plaintiffs as the insureds and that **this cause of action is therefore premature."*** R., *Sullivan I*, 125–26 (emphasis added). Dated January 30, 1985, Allstate's brief was signed by three of its counsel, Samuel Eismann, Frank H. Johnson, and Teresa A. Sherman. R., *Sullivan I*, 126.

That brief is immediately followed by Judge Magnuson's written decision, salient portions of which are:

The record in this case shows, without any dispute to the contrary, the uninsured motorist insurance provisions contained a clause calling for arbitration. Section 7–901 of the Idaho Code provides such a provision is valid, enforceable and irrevocable, save upon such grounds as exist at law or in equity for the revocation of any contract. It should be noted the plaintiffs have not alleged or contended the existence of any such grounds.

There is no contention on the part of the plaintiffs the arbitration clause was waived. In Idaho, arbitration is strongly favored. · It should be noted also that the plaintiffs were the first to invoke the arbitration clause of the insurance policy, which culminated in a signed agreement to arbitrate.

The Court has reviewed the pleadings and affidavits on file herein and finds there does not exist any genuine issue of material fact.

R., *Sullivan I,* 131.

*The real issue in this case is whether the insured can bring an action against the insurer* for refusal to pay an uninsured motorist claim *before the liability of the uninsured motorist is determined by agreement of the parties or by arbitration.* The Idaho Appellate Courts have not dealt with this issue beyond their holding in the *Carter* [v. *Cascade Ins. Co.*] case, 92 Id. 136 [438 P.2d 566 (1968)].

This Court concludes a cause of action based on an insurer's refusal to pay an uninsured motorist claim cannot exist until the liability of the uninsured motorist is admitted or adjudicated and the insurer *then* refuses to pay the claim.

. . . .

This Court concludes *the insured should be required to first go through arbitration of an uninsured motorist claim, as required by the automobile policy, prior to bringing an action against the insurer for a bad faith*

*claim. Mendelson vs. State Farm,* (Oregon 1979) [285 Or. 269] 590 Pac.2d 726 [1979]. This reasoning appears to be a logical extension of our Supreme Court's reasoning in the *Carter* case, supra.

This Court concludes there exists a different relationship between the insured and the insurer in an uninsured motorist insurance situation. In the uninsured motorist context, the uninsured motorist carrier becomes, in effect, the insurer of the uninsured; thereby creating an adversarial relationship between the insured and the insurer in the uninsured motorist insurance policy.

The *Mendelson* case (590 P.2d 726) recites a set of facts that are almost identical to those before this Court. It presents claims in the same fashion as those herein. The Oregon court had little difficulty in determining the insurer must go through arbitration as required by the policy.

R., *Sullivan I,* 134–35 (emphasis in original and added).

Therefore, this Court concludes the defendant is entitled to summary judgment dismissing plaintiffs' cause of action against the defendant, as a matter of law.

R., *Sullivan I,* 137. The Order of Dismissal, as drawn by Mr. Eismann, provided:

On December 27, 1984, this matter came on regularly for hearing on Motion for Summary Judgment by Defendant Allstate Insurance Company. The plaintiffs were represented by David A. Manko and Bruce A. Kaiser; the defendant was represented by Samuel Eismann, Frank H. Johnson and Teresa A. Sherman. The Court heard the argument of counsel on the date previously noted, and has considered the Motion on file herein, including attachments thereto consisting of the affidavit of Mr. Eismann, the Arbitration Agreement entered into between the parties and their respective counsel in 1984, the rules of the American Arbitration Association, and the Demand for Arbitration dated September 21, 1984; the Court having also reviewed and considered the records and files herein on

file in the above-entitled case and having issued and filed herein its Memorandum Decision, and good cause appearing therefor;

IT IS HEREBY ORDERED that Defendant's Motion for Summary Judgment is hereby granted and Plaintiffs' Complaint is hereby dismissed with prejudice and without costs or attorneys' fees to either party.

DONE IN OPEN COURT this _____ day of _____, 1985.

_____

_____
District Judge
Presented by:
/s/ Samuel Eismann
Samuel Eismann
Attorney for Defendant

R., *Sullivan I*, 142–43.

As has been previously noted some time ago, in Bistline, J.'s opinion of February 15, 1990, the arbitration award itself did not surface in the courtroom or court proceedings until the court convened with counsel at 2:15 p.m. to hear and deny the plaintiffs' motion for reconsideration of the dismissal which occurred by virtue of Judge Magnuson's memorandum decision and the order prepared by Allstate's counsel and signed by Judge Magnuson. The arbitration award was not considered by Judge Magnuson. He did consider the agreement to arbitrate, however.

In addition to the minutes of the hearing on May 23, 1985, it is now found that we have a reporter's transcript of that short hearing. The transcript is more illuminating than the minutes which were part of the clerk's transcript. As the hearing was drawing to a conclusion and Allstate's counsel terminated his presentation by commenting: "I reviewed very carefully the court opinion that Your Honor handed down ... I think it's very well reasoned; nothing that comes up [today] that would address the points raised by the Court, or

would certainly indicate that those should be in any way altered...." *Sullivan I*, Tr. Vol. 1, 13. Judge Magnuson, at that time, asked counsel if he had a copy with him, as he, the Judge, did not. Counsel obliged the judge with a copy, and the judge read it. The following then took place and brought the hearing to a close:

THE COURT: For the record, I am not taking judicial notice of the House of Representatives Bill 193, or whatever it was. Its existence will not play a role in my determination of this case.

Okay, the Court [has] had an *opportunity to review its Memorandum Decision* and an opportunity before this hearing to review plaintiffs' brief in support of this Motion For Reconsideration. And upon reflecting, *I am going to stand by my original decision.*

This is an interesting field. I wasn't aware of these decisions that Mr. Eismann brought into court today.[2] They are interesting to read. But I've got to say in all candor, my determination was made before I was aware of them. So, they do not play a role in the decision. And I have reviewed the Order that I have prepared, and that's what I meant to do by the decision is to dismiss the action.

Would you prepare such an order? Thank you.

MR. MANKO: Is that all causes of action?

THE COURT: Dismiss the action.

(Thereupon the proceedings came to a close.)

*Sullivan I*, Tr. Vol. 1, 13–14. Neither the Court minutes nor the transcript give any suggestion that Judge Magnuson was aware that the *drawn order* to which he had affixed his signature differed *from the directive* of his memorandum decision given to counsel for Allstate in his eleven-page decision:

**2.** The cases in question, which counsel for Allstate furnished to the court, consisted of a Fourth Judicial District, Ada County, decision of Judge Newhouse in *United First Federal Savings & Loan Ass'n. v. Transamerica Ins. Co.*, and a

ruling in an unnamed case made by U.S. District Judge Harold Ryan, and Judge Haman's decision in *Nichols v. Kon Tiki, Inc., et al.*, First District Court, Kootenai County.

Therefore, this Court concludes the defendant is entitled to summary judgment dismissing plaintiffs' cause of action against the defendant, as a matter of law.

The attorney for the defendant is hereby requested to prepare a suitable Order granting Summary Judgment to the defendant, *as provided herein.*

This Court directs each party shall be responsible for their own attorneys' fees herein. The Court finds this matter has not been brought or defended, by either party, frivolously or unreasonably or without foundation.

BE IT SO ORDERED.

Dated at Wallace, Idaho, this 16th day of April, 1985.

R., *Sullivan I,* 137 (emphasis added).

Counsel for Allstate obediently put in his drafted order a provision for dismissal, and a provision for no costs or attorneys' fees, but a secretary, perhaps, must have inadvertently sandwiched in the two words "with prejudice," such being almost a matter of rote where more often than not most dismissals are with prejudice, although some are specifically without prejudice, and some are simply dismissals. Of course, it is well-recognized that a dismissal which is not based on the merits of the alleged controversy does not operate as a dismissal with prejudice. In this case the court simply concluded that the decision to dismiss, which was made in the memorandum decision prior to the arbitration award appearing in his courtroom, would nevertheless stand.

In conclusion, to this day, Justice Huntley's opinion is better reasoned than what the Court has offered, and portions of it have been the nucleus of my views which concur with his. Particularly we are both aware that Judge Cogswell was the first to conclude that the decision of Judge Magnuson was "to hold that the Complaint in Case No. 23040 [*Sullivan I*] was prematurely filed in that a cause of action had not then arisen because of the arbitration proceedings [which had not proceeded and which had not been waived]."

Although the first sentence of Justice Boyle's opinion acknowledges that the appeal is from an order denying summary judgment, which he again mentions in later pages, the opinion never, never, never shows any concern for the rules pertinent to summary judgment proceedings, namely that the facts are to be liberally construed in favor of the party at whom the motion is directed and the nonmoving party is given the benefit of all favorable inferences which might reasonably be drawn from the facts and circumstances. What has happened here is that the majority has jumped the gun, and wholly unmindful of the rule, which goes unmentioned, has redecided the defendant's motion for summary judgment, and grants it. Not one word in the clerk's record, or in the reporter's transcript can seriously be contended as standing for the proposition that the arbitration award was indeed by Judge Magnuson considered as a part of the record *before him,* when he wrote his own decision of April 16, 1985. As was well illustrated by his remarks: "[u]pon reflecting, I am going to stand by my original decision ... and that's what I meant to do by the decision is to dismiss the action." Period means period, and under summary judgment rules it ill-behooves four members of this Court to construe language against the party resisting a motion for summary judgment which, of all things, was only for a dismissal.